Cusía, per
Nott, J.
At common law the receivers of stolen goods knowing them to have been stolen, were guilty only of a misdemeanour; 3 Chitty, C. L. 713. By the statute 4th and 5th, William and Mary, c. 9, it is enacted that such persons, “shall be taken and deemed ac-cessaries after the fact, and shall incur tlie penalties which attach to offences in that degree.” Since that statute, it has been held that no indictment as for a mis-demeanour at common law, can be supported; 3d Chitty, Crim. L. 713; 1st Ld. Raymond, 711. But it is contended that the Statute of William and Mary does not relate to receivers of goods from a slave — that it'"embraces only those who have received stolen goods from one who is capable of committing a felony, and that by our act a slave is not regarded as capable of committing a felony. If that position be correct, perhaps the ^conclusion will follow. The idea is a new one to me, and it is, therefore, the first time that I have had occasion to.consider the question. But I have not been able to discover any íoundaüon for such an opinion. Our act considers slaves *361 &s moral agents. It makes them amenable to the law for the commission of crimes; and, it appears to me, that it contemplates, them in so many words as capable of committing felonies. The act of 1740, P. L. 167, 2 Brev. 233, provides, that whereas some crimes and offences of an enormous nature, and the most pernicious consequences may bé committed by slaves, &c. Be it, therefore, enacted, that the several crimes and offences hereinafter particularly enumerated are hereby declared, to be felony without the benefit of clergy, &c. After enumerating several offences, it further says, — or shall feloniously steal, take,, or carry away any slave, &c. every such, slave, &c. shall suffer death as a felon. The act appears to me so plain as to resist all reasoning on the subject. It declares the offences prohibited to be felonies. To incur the penalty, it is required that they shall bé feloniously done; and the offenders are • doomed to death' “as felons.” It appears to me, therefore, that the defendant cannot be indicted for a misdemeanour at common law, and that the first .count of the indictment cannot be supported.
The next question is, whether the indictment can be supported under the statute — 1st. Ann, c, 9. In order to decide that question, it is necessary'to observe that in England there is another statute on the same subject, passed in the 5th year of Queen Ann, c. 33, which provides that where the principal felon cannot be taken so as to be prosecuted, &c. the receiver may be indicted as for a misdemeanour. Under these statutes, it has been held that an indictment for a misdemeanour cannot be maintained against the receiver where the principal is known and can be prosecuted,.but that he must be indicted as an accessary ; Russell on Crimes, 721, 726, Do. 1138, 1303, 1312; East. C. L. 650, 745, 781; Foslor’s C. L. 374. .It is now contended that this construe *362 tion of the English statutes arises from the provisions oí the two statutes taken together, and that as the statute of 5 Arm is not of force in the State, we must be governed by the first which admits of a different construction. But I am disposed to think, that if we decide the case upon the statute of 1st. Ann alone, w'e shall come to the same conclusion as the English Judges. The mischief intended to be provided against, was the escape of receivers where the principal was not known or could not be prosecuted. If the principal were known, and could be prosecuted, the mischief did not exist, arid, therefore, the remedy did not apply ; and the rule laid down by all the elementary writers, for the construction of .statutes, is to look to the evil intended to he removed, and the remedy provided; and penal statutes ought not to be extended by construction beyond the evil intended to he provided against. But without relying alone on the construction of that statute, the provincial act of assembly of 1769, is so exactly in the words of the statute 5th Ann, that if may almost be considered as a re-enactment of the provisions of that statute, and, I believe,- has always been so regarded, so far as relates to the question now under consideration, and that the decisions in this State have been in conformity with those in England on this subject.
But another, and I think a more formidable objection is made : — that a white person cannot be accessary to a crime committed by a slave or person of colour.— But it appears to me that even that objection can not prevail. The principal ground relied on in support of this objection is, that the record of the conviction of a slave cannot be given in evidence on the trial of the accessary; for if the conviction should happen to be founded upon testimony which, though competent to convict a slave, should not bo competent against a while person, Hie record could not be higher evidence than *363 •ihat upon which it is founded, and then could not be received. But the evidence of the conviction of the principal, is not conceived as evidence of the guilt of the accessary, but merely to shew that the principal has been -convicted for the purpose of avoiding the absurdity of convicting the accessary of a crime of which the person accused as principal may be acquitted. I do not, therefore, feel any difficulty on that score; and if I did, I should be of opinion that it belonged to the legislature to provide a remedy, and not to this Court. And it would even be better that receivers of stolen goods should never be punished, than that such a doctrine should be established.— Let it once be understood that a white person cannot be an accessary to a person of colour, (for the principle is ■the same by our law, whether applied to bond or-free,) and that description of persons may be made the instruments of murder, burglary, arson, and the whole catalogue of the most atrocious crimes, and the real offender escape with impunity. There is, however, one question or which I have not yet been able to satisfy my mind.— That is, in what manner it is to be ascertained on the trial of the accessary, whether the principal had been guilty of grand or petit larceny. That fact does not appear from the form of the record of conviction usually made out in such cases. Whether that will be an insurmountable difficulty, is a question on which I am not yet prepared to express an opinion. But if it should ultimately turn out so, I do not think it would justify the Court in passing a law, to provide for the case, it is undoubtedly a subject worthy the attention of the legislature, and I hope will not escape the notice of that body. In any view which I have been able to take of the question, I am of opinion that the judgment must be arrested.

Judgment arrested.